UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD CARO, et al.,

    Plaintiffs,

v.                                            Case No. 3:23cv6666-MCR-HTC

MAX MATHEWS RENTAL, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiffs Richard and Svetlana Caro, along with their 19-year-old daughter Angelique Caro, bring this action against Defendants for failing to renew an apartment lease. Plaintiffs allege such failure violated their rights under the First Amendment and Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, as well as state law. Plaintiffs have also attempted to assert a claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.* Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint,[1] ECF Doc.

---

[1] Plaintiffs filed their initial complaint on March 24, 2023, ECF Doc. 1, and a First Amended Complaint less than a month later, ECF Doc. 9. Although Plaintiffs attempted to file a second amended complaint two days later, the Court struck that complaint. ECF Docs. 11, 13. Subsequently, Defendants moved to dismiss the First Amended Complaint, ECF Doc. 16, which the Court mooted, after giving Plaintiffs an opportunity to file a second amended complaint. ECF Doc. 21. Despite the Court detailing for Plaintiffs the deficiencies in the First Amended Complaint, the Plaintiffs' Second Amended Complaint is not substantively different, and includes a misplaced claim for wire fraud.

22, for failure to state a claim. ECF Doc. 23. Upon consideration of the motion, Plaintiffs' opposition, ECF Doc. 24, and the relevant law, the undersigned recommends the motion be GRANTED. While Plaintiffs may believe the nonrenewal of their lease was unfair, the factual allegations simply do not show Defendants violated any federal law.

I.   BACKGROUND

Plaintiffs sue three Defendants: (1) Max Mathews, Jr., (2) Max Mathews Rentals, and (3) Max Mathews Development, Inc. Plaintiffs identify Mr. Mathews as the "landlord," Max Mathews Rentals as an agent for Mr. Mathews, and Max Mathews Development as the entity through which Mr. Mathews lists his rental properties.[2] ECF Doc. 22 at 5. Mr. Mathews and the corporate defendants are residents of Florida, as are the Plaintiffs. *Id.* The following factual allegations are taken from the Second Amended Complaint and are accepted as true for purposes of this report and recommendation.

Upon Mr. Caro's retirement, Plaintiffs moved to Santa Rosa Beach, Florida, from Chicago and began leasing a 3-bedroom apartment/townhouse at 62b Jacksons Run in May 2015, after having communicated with Ms. Kennedy, an employee of

---

[2] In addition to failure to state a claim, Defendants also argue Max Mathews Development Co., Inc., should be dismissed because no such entity exists, and to the extent Plaintiffs intended to name Mathews Development Co., Inc., that entity holds no interest in the property management business of Mr. Mathews and is further not a party to any lease agreement with Plaintiffs. ECF Doc. 23 at 3–4. Because the undersigned finds Plaintiffs' clams fail as a matter of law, the undersigned does not address this argument.

Max Mathews Rentals via emails and U.S. Mail about the property. Each year, Plaintiffs timely renewed their lease by email; paid the rent on time; and never received any complaints or notices of violations.

In December 2021, Mr. Caro suffered a "severe ischemic stroke, rendering him unable to talk, walk, and write." *Id.* at 6–7. "It took him months of intensive therapy to partially recover, including relearning how to drive safely." *Id.* at 7. In 2023, his condition "started to worsen." *Id.* Because Mr. Caro was the only driver in the family, and was concerned about his deteriorating health, Plaintiffs considered moving back to Chicago because it has a "good transportation system." *Id.* However due to costs and "Richard's disabilities, rendering it too difficult for him to do the move and drive the long distance," they decided to remain in Santa Rosa Beach. *See id.*

On January 5, 2023, Mr. Caro contacted Ms. Kennedy and "informed Defendants of his disabling stroke to learn what the new rent would be for the 3 bedroom and to see about renting a smaller 2 bedroom which would be more manageable for him." *Id.* at 7. Ms. Kennedy responded that the 2023 rent for a 2-bedroom would be $2,000 a month, the same amount Plaintiffs were currently paying for their 3-bedroom apartment, and the new rent for the 3-bedroom apartment had not yet been set. Mr. Caro "expressed his concern about the increases in rent"

and asked Ms. Kennedy if she would ask Mr. Mathews about letting the Plaintiffs rent a 2-bedroom apartment. *Id.* at 8.

Plaintiffs believe Mr. Mathews had already decided by January 5, 2023, not to renew the lease or let Plaintiffs rent a 2-bedroom apartment, but Ms. Kennedy did not tell them so. Instead, on March 17, 2023, Plaintiffs received a notice of non-renewal, giving them until May 8, 2023, to move out. The notice did not state the reasons for the decision not to renew Plaintiffs' lease. Despite sending two emails asking why the decision was made, Ms. Kennedy would not explain or discuss the problem, and instead, just repeated that Plaintiffs had to vacate the premises by May 8. *Id.* at 9.

On March 20, 2023, Mr. Caro asked Ms. Kennedy if he could stay in the apartment through May 10, because he was scheduled to appear for a telephone hearing with an administrative law judge on that day. "He asked for consideration to be allowed to have the May 10, 2023 hearing take place to give that Federal proceeding priority, especially in light of his deteriorating health and in light of finding a new home and setting up in time a cable-internet system so the phone could be used." *Id.* However, Ms. Kennedy repeated that the apartment needed to be vacated by May 8. *Id.* at 9–10. Despite difficulties, Plaintiffs found a new smaller home to rent and vacated the 62b Jacksons Run apartment by April 30, 2023.

Based on the foregoing, Plaintiffs seek to bring the following federal claims: (1) a First Amendment retaliation claim (Count I); (2) a reasonable accommodation claim under the FHA (Count III); (3) a claim "for release of Richard's 30-day obligation" under the FHA (Count IV); and (4) a wire and mail fraud claim under 18 U.S.C. § 2707(c) (Count VII). Plaintiffs also seek to bring the following state law claims: (1) breach of contract (Count II), (2) "tortuous emotional abuse" claim (Count V), and (3) fraudulent misrepresentation (Count VI).

## II.   LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contains sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Court reads Plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. DISCUSSION

For the reasons set forth below, and as the Court detailed for Plaintiffs in its May 12, 2023, Order, Plaintiffs have failed to state a claim for relief under any federal cause of action. As such, the Court should decline to exercise supplemental jurisdiction over the state law claims.

#### A. First Amendment Claim

In Count I, Plaintiffs allege Defendants violated Plaintiffs' First Amendment rights. Specifically, Plaintiffs allege Defendants did not renew Plaintiffs' lease in March 2023 in retaliation for Mr. Caro's complaints about the rent increase for 2023. They also take issue with Defendants' alleged failure to notify Plaintiffs until March 2023 of the non-renewal, even though Defendants allegedly knew in January 2023 they were not going to renew the lease and contend this caused Plaintiffs additional monetary harm. As the Court has previously advised Plaintiffs, absent allegations Defendants engaged in some state action, they are not subject to liability under the First Amendment. ECF Docs. 10 at 3–4; 21 at 4–5.

The Supreme Court has made clear that the "Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Cmty. Access Corp. v. Halleck,* 139 S. Ct. 1921, 1926 (2019). In other words, it constrains only *governmental,* not private, abridgment of speech. *Id.* Courts apply the state action doctrine to distinguish between government and private conduct. *Id.*

Under the state action doctrine, a private entity may be considered a state actor when it exercises a function "traditionally exclusively reserved to the State." *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, (1974)). Very few functions fall into that category. *Id.* at 1929 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)).

Plaintiffs, however, have alleged no facts showing that Defendants, who are undoubtedly private actors, were engaged in a function traditionally reserved to the State. Plaintiffs' conclusory allegation that Defendants acted "as if they were their own governing legal State authority in Florida," does not advance the ball in that regard. ECF Doc. 22 at 11. Simply put, "[w]ithout governmental action there can be no First Amendment violation." *United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 942 (11th Cir. 1995) (citations omitted) (enforcement of settlement stipulation did not constitute "government action"). Plaintiffs' First Amendment claim fails as a matter of law.[3] *See, e.g., Greiser v. Whittier Towers Apts. Ass'n Inc.*, 551 F. App'x 506, 507 (11th Cir. 2014) (affirming dismissal of second amended complaint based on failure to allege a condo association acted under state law by censoring plaintiff's newsletters to homeowners).

---

[3] In Plaintiffs' opposition, they appear to argue that the claim is one under State law rather than federal law. Even if that were the case, the state law claim is also subject to dismissal for the reasons set forth in Section II.D. below.

Case No. 3:23cv6666-MCR-HTC

### B.     FHA Claims

Plaintiffs' Second Amended Complaint also falls short of stating a claim under the FHA.  The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]" 42 U.S.C. § 3604(f)(1).  It also prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]" 42 U.S.C. § 3604(f)(2).  As the Court previously explained, there are only three theories under which a plaintiff may establish a claim of discrimination: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.  ECF Doc. 21 at 5.

To state a disparate treatment claim based upon Mr. Caro's disability, Plaintiffs must show Mr. Caro was "actually [] treated differently than similarly situated non-handicapped people." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008) (citation omitted).  Here, Plaintiffs have not alleged Defendants treated another tenant without a disability more favorably than Plaintiffs.  To the contrary, Plaintiffs allege that other non-disabled tenants, who, like them, had paid their rent on time and had no notice of wrongdoing, also received the minimum 30-day notice of non-renewal.  ECF Doc. 22 at 16.  Thus, Plaintiffs have not stated a claim for disparate treatment.  *See Schwarz*, 544 F.3d at 1216 (affirming dismissal

of disparate treatment claim because the corporate plaintiff "utterly failed to establish that it was treated differently than anyone else"); *Price v. Howard*, 2023 WL 2767770, at *3 (N.D. Ga. Mar. 31, 2023) (finding plaintiff did not sufficiently plead a prima facie case of disparate treatment on the basis of race, because she failed to allege "any facts suggesting she was actually treated differently than White prospective applicants").

Likewise, there are no facts to support a claim based on disparate impact. As the Court previously advised Plaintiffs, a prima facie case for an FHA disparate impact claim has three elements: (1) the identification of a specific, facially-neutral practice or policy; (2) the existence of a significant statistical disparity between the effects of the challenged policy or practice on different groups; and (3) a robust causality connecting the challenged policy and the statistical disparity. *See* ECF Doc. 21 at 5; *see also EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1268, 1274 (11th Cir. 2000). Plaintiffs' Second Amended Complaint, however, like the First Amended Complaint, does not identify any policy which resulted in Defendants' nonrenewal of their lease. *See, e.g.*, *Pintea v. Varan,* 2016 WL 6877627, at *5 (N.D. Ill. Nov. 22, 2016) ("even if Plaintiffs wanted to pursue a disparate impact claim under the FHA, the complaint still would be inadequate. Plaintiffs fail to specifically identify any facially neutral policy of Defendants, a necessary element of an FHA disparate impact prima facie case."), *aff'd sub nom. Pintea v. Gurvey*, 692 F. App'x

798 (7th Cir. 2017).

Finally, Plaintiffs have failed to allege facts sufficient to support a claim that Defendants failed to provide Richard with a reasonable accommodation when they did not allow him to rent a 2-bedroom apartment. As set forth in the Court's prior order, to state a claim under the FHA for failure to provide a reasonable accommodation, Plaintiffs must establish: (1) at least one of them is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) they requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the disabled individual an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation. *See* ECF Doc. 21 at 7 (citing *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016)). Here, even presuming Plaintiffs have sufficiently alleged Mr. Caro is disabled under the meaning of the FHA, they have not met the other elements.

First, Plaintiffs concede in their response they never "ask[ed] for the 2 bedroom apartment as a reasonable accommodation." ECF Doc. 24 at 15. Indeed, nowhere in Plaintiffs' allegations do they say they made such a request or even "expressly" told Defendants they needed a smaller apartment because of Mr. Caro's disabilities. *Id.* What Mr. Caro told Ms. Kennedy was that Plaintiffs wanted a smaller apartment to "save a bit." ECF Doc. 23-1 at 6. And while Mr. Caro did tell

Ms. Kennedy about his stroke, he said it prevented him from driving, which is why they were interested in moving to Chicago, *id.* at 7, and then, subsequently, why they decided not to move, *id.* at 3.[4] Nonetheless, Plaintiffs argue such a request "was implicit" in his conversations with Ms. Kennedy and, thus, it was not "necessary" for Plaintiffs to "more explicitly articulate the reason for [Mr. Caro]'s request." ECF Doc. 24 at 15.

It is well settled, however, that for a defendant to be liable for failing to provide a reasonable accommodation, he must know of the request and the disability. *See Schwarz*, 544 F.3d at 1219 ("a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA."). Even if Defendants were aware Mr. Caro had a stroke, Defendants "'cannot be liable for refusing to grant a reasonable and necessary accommodation if the [Defendants] never knew the accommodation was in fact necessary.'" *Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 852 (11th Cir. 2015) (finding plaintiff's failure to accommodate claim unavailing because plaintiff never explained to the Board she

---

[4] Attached to Defendants' motion are emails communications between Plaintiffs and Ms. Kennedy. ECF Doc. 23-1. Plaintiffs do not dispute the authenticity of those communications or allege they are incomplete. *See Cox v. Anesthesia Business Consultants, LLC*, 3:20cv5731-TKW/EMT, 2020 WL 12279046, at *2 (N.D. Fla. Nov. 25, 2020) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)) ("Although the Court generally may not consider materials outside the four corners of the complaint in ruling on a motion to dismiss, a document attached to the motion to dismiss may be considered" if it is central to the plaintiff's claim, and (2) its authenticity is not challenged."); *see also McNeal v. Duval Cnty. Sch. Bd.*, 2011 WL 6010293, at *5 (M.D. Fla. Dec. 1, 2011) (considering correspondence attached to response to motion to dismiss as being central to plaintiff's claim).

Case No. 3:23cv6666-MCR-HTC

needed a voucher extension to compensate for her son's disability"). While Plaintiffs are not required to use any particular "magic" words in making their request, they must give Defendants some indication they were requesting a reasonable accommodation for Mr. Caro's disability – which they did not do. *See id.*

Second, there are no facts showing that a smaller apartment was *necessary* to afford Mr. Caro an equal opportunity to use and enjoy a dwelling. *See Hunt*, 814 F.3d at 1225. To be considered necessary, "[t]he accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1280 (11th Cir. 2022) (citing *Schwarz*, 544 F.3d at 1226). Here, Plaintiffs merely allege that renting a 2-bedroom apartment would have been "more manageable" for Mr. Caro. ECF Doc. 22 at 5. Such a bald allegation, even when considered with the allegations in the response that it would be easier to clean, is simply insufficient. *See, e.g.*, *Alonso Cano v. 245 C&C, LLC*, 2019 WL 11769102, at *20–21 (S.D. Fla. Nov. 25, 2019) (dismissing claims for reasonable accommodation under the FHA because plaintiffs "do not explain how, and it is not readily apparent" that "the requested accommodations were necessary to alleviate the effects of [plaintiff]'s disability").

For the reasons set forth above, Plaintiffs have not stated a claim for failure to

accommodate under the FHA.[5]

### C.   Wire and Mail Fraud Claim

Plaintiffs allege for the first time in the Second Amended Complaint that Defendants conspired and engaged in a scheme to defraud Plaintiffs "by knowingly and intentionally omitting material information," to wit, that Defendants reserved the right not to renew Plaintiffs' lease, even if they were "good tenants" (that is, they "paid their rent on time always and had no notice of doing anything wrong"), using interstate wire and email communications and U.S. mail. ECF Doc. 22 at 14–17. Specifically, Plaintiffs contend that in March 2015, prior to moving into the property, they communicated with Ms. Kennedy over email and mail regarding the property and at no time in any of the communications "was there a disclosure that the Landlord, if he exercised his State granted power not to renew the lease, would do without regard to the conditions and legal requirements of Florida Statutory and Common law, including those barring punitive action and actions in relation." ECF Doc. 22 at 6. They contend such an omission constitutes "repeated use of wired and mail communications to defraud" Plaintiffs. *Id.*  Plaintiffs seek relief pursuant to the

---

[5] Although Plaintiffs also attempt to assert another FHA claim "for release of Richard's 30-day obligation," as Defendants have pointed out, this claim is not based upon the FHA (or any other federal law for that matter) and, instead, appears to be merely a request for financial relief, namely, a return of Plaintiffs' security deposit. *See* ECF Docs. 22 at 12–13; 23 at 9.

Stored Communications Act ("SCA"), 18 U.S.C. § 2707(c). This claim is wholly without merit.

"[T]he SCA is primarily a criminal statute with a civil component aimed at creating a private right of action against *computer hackers and electronic trespassers*." *Armor Corr. Health Servs., Inc. v. Teal*, 2020 WL 9671340, at *2 (S.D. Fla. Oct. 13, 2020) (citation omitted) (emphasis added). By its plain language, the statute makes it unlawful to "intentionally access[ ] without authorization [or in excess of one's authorization] a facility through which an electronic communication service is provided . . . and [to] thereby obtain[ ], alter[ ], or prevent[ ] authorized access to a wire or electronic communication while it is in electronic storage in such system[.]" 18 U.S.C. § 2701. Section 2707 of the SCA allows individuals aggrieved by such a violation to seek civil remedy. *See* 18 U.S.C. § 2707(c). An action under the SCA may arise, for example, when someone accesses another's email account without authority. *See, e.g.*, *Vista Marketing, LLC v. Burkett*, 812 F.3d 954 (11th Cir. 2016) (determining appropriate amount of damages after a jury found an ex-wife liable under the SCA for accessing her ex-husband's emails to show he was lying about his assets in divorce proceedings). An action under § 2707 must be brought within 2 years of when the claimant first discovered or had a reasonable opportunity to discover the violation. 18 U.S.C. § 2707(f).

It is clear Plaintiffs are not entitled to any relief under the SCA. First, Plaintiffs do not allege that Defendants accessed Plaintiffs' electronic communications without authority. To the contrary, Plaintiffs admit Mr. Caro communicated with Defendants through the use of email. Regardless, the communications at issue, even if they could form the basis of any claim under § 2707, occurred in March 2015, more than 8 years before this suit was filed.

### D.   State Law Claims

For the reasons set forth above, all of Plaintiffs' federal claims fail as a matter of law. In the absence of any viable federal claims, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims for (1) breach of contract; (2) fraudulent misrepresentation; and (3) tortious infliction of emotion distress, and, instead, dismiss those claims.[6]  *Greiser,* 551 F. App'x at 507 ("A district court may decline to exercise supplemental jurisdiction over a claim after dismissing all claims over which it has original jurisdiction."). Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

---

[6] Defendants argue claims based on the lease agreement should be dismissed because of an exculpatory clause contained in the lease. Since the undersigned is recommending the Court decline to exercise jurisdiction over the state law claims, which are premised on the lease agreement, the Court need not reach this argument.

Case No. 3:23cv6666-MCR-HTC

Accordingly, it is RECOMMENDED:

1. That Defendants' motion to dismiss the Second Amended Complaint, ECF Doc. 23, be GRANTED, and Plaintiffs' claims be DISMISSED.

2. That the clerk close the file.

At Pensacola, Florida, this 20th day of July, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.